UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

FEAYANEE D.[1],
on behalf of minor child, M.T.,

Plaintiff

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 1:24-cv-143

Hopkins, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Faeyanee D. filed this Social Security appeal in order to challenge the Defendant's finding that her minor child (hereinafter "MT") is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff seeks judicial review of the denial of benefits. As explained below, the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Background**

On October 22, 2018, Plaintiff filed an application for Supplemental Security Income on MT's behalf. (Tr. 219-224). The Social Security Administration denied Claimant's claim initially and upon reconsideration. (Tr. 134-136, 138-140, 142-144, 145-147, 149-151). Plaintiff then timely requested a hearing before an administrative law judge (ALJ). (Tr. 152-154). ALJ Boylan conducted a hearing on July 14, 2020, at which Plaintiff and MT testified. (Tr. 69-82). On July 22, 2020, ALJ Boylan denied Plaintiff's application in a written decision. (Tr. 107-120). In March 2022, the Appeals Council remanded the case for further proceedings because of issues with the hearing's

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.

audio recording. (Tr. 125-129.) On remand, ALJ Lloyd Hubler held a hearing in October 2022 and issued a decision on March 22, 2023, finding MT not disabled. (Tr. 17-29, 36-66.)

Notably, the ALJ found that MT has severe impairments of attention deficit-hyperactivity disorder ("ADHD") and oppositional defiant disorder (ODD). (Tr. 18). Considering those impairments, the ALJ found that MT functionally experiences "marked" limitations in only one relevant area or "domain" of his life – interacting and relating with others. (Tr. 21). Specifically, the ALJ found that MT had a marked limitation in interacting and relating with others, but no limitation in moving about and manipulating objects and less than marked limitations in acquiring and using information, attending and completing tasks, the ability to care for himself, and health and physical well-being. (Tr. 20-29.) Because MT has only one area of "marked" limitation, the ALJ determined that MT was not under disability, as defined in the Social Security Regulations, and was not entitled to SSI. (Tr. 29). The Appeals Council then denied MT's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination.

On appeal to this Court, Plaintiff argues that the ALJ erred by failing to find that MT's impairments or combination of impairments did not functionally equal the severity of the listings. Upon careful review, the undersigned finds that Plaintiff's asserted assignment of error is not well-taken.

**II. Analysis**

**A. Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). An individual under the

2

age of eighteen will be considered to be under a disability if the child has a medically determinable impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last, for a continuous period of not less than 12 months. *See* 42 U.S.C. §1382c(a)(3)(C)(i). The implementing regulations define the standard of "marked and severe functional limitations" in terms of "listing-level severity." *See* 20 C.F.R. §§416.902, 416.906, 416.924a, 416.926.

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

The Sixth Circuit has summarized the regulations concerning a child's application for disability benefits as follows:

3

> The legal framework for a childhood disability claim is a three-step inquiry prescribed in 20 C.F.R. § 416.924. The questions are (1) is the claimant working, (2) does the claimant have a severe, medically determinable impairment, and (3) does the impairment meet or equal the listings? * * * An impairment can equal the listings medically or functionally * * *. The criteria for functional equivalence to a listing are set out in § 416.926a. That regulation divides function up into six "domains":
>
>> (1) Acquiring and using information;
>>
>> (2) Attending and completing tasks;
>>
>> (3) Interacting and relating with others;
>>
>> (4) Moving about and manipulating objects;
>>
>> (5) Caring for yourself; and
>>
>> (6) Health and physical well-being.
>
> § 416.926a(b)(1). To establish a functional impairment equal to the listings, the claimant has to show an extreme limitation in one domain or a marked impairment in more than one. § 416.926a(d).

*Ivy A. ex rel. Of Z.H. v. Commr. of Social Sec.*, S.D.Ohio No. 1:23-cv-802, 2024 U.S. Dist. LEXIS 220411, at *5-6 (Dec. 5, 2024)

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is less than a preponderance of the evidence. *Bell v. Comm'r of Soc. Sec.*,

4

105 F.3d 244, 245 (6th Cir. 1996). The threshold for substantial evidence is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In federal court, the claimant carries the burden of showing that an ALJ prejudicially erred. *Shinseki v. Sanders*, 556 U.S. 396, 408-09 (2009).

**B. The ALJ's decision is supported by Substantial Evidence**

As noted above, the ALJ found that MT had a marked limitation in interacting and relating to others.  Plaintiff, however, argues that the evidence of record supports a finding for a "marked" limitation in the domain of acquiring and using information and attending and completing tasks. As detailed above, a child's impairment(s) functionally equals the listing, and will be found disabled, if it results in "marked" limitations in two of the six domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

*1. Acquiring and Using Information*

A marked limitation exists when the child's impairment "interferes seriously" with the ability to independently initiate, sustain, or complete activities, regardless of whether the impairment limits only one activity in the domain, or several activities. The interactive and cumulative effects of a child's impairments must be considered; both relevant regulations and several social security rulings also require the Commissioner to consider the "whole child" in making findings regarding functional equivalence. 20 C.F.R. § 415.926a(b) and (c); *see also generally* SSR 09–1p. Relevant to Plaintiff's challenge in this case, a "marked" limitation is defined as a limitation that is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2).

5

The domain of acquiring and using information considers a child's ability to learn information and to think about and use the information. See 20 C.F.R. § 416.926a; SSR 09-3p, 2009 WL 396025, at *2.

The ALJ determined that MT has less than a marked limitation in acquiring and using information. In making this finding, the ALJ noted that MT was diagnosed with ADHD. The ALJ also noted that MT routinely demonstrated average/intact memory and an appropriate fund of knowledge.  Namely, in March 2019, it was noted that MT did not have any barriers to learning.  His academic records show that his grades during the first quarter of the 2018-2019 school year ranged between A+ and C-, with the exception of one class.  (Tr. 26). The ALJ noted that in December 2018, MT's mother reported that he had been expelled from school; however, his school reported that his mother voluntarily withdrew him from school.  Id.  The ALJ noted that the record indicated that it does not appear the MT attended school again until the 2019-2020 school year. Id.

The ALJ further noted that MT did not engage in consistent medication management, although his mother reported his symptoms improved when he took medication.  Id.  Despite a lack of medication during most of the 2019-2020 academic year, the evidence shows that MT's cumulative grades for the year ranged from A+ to C- in every subject. Id.  The ALJ also noted that the new evidence suggests worsening grades, but MT was also non-compliant with medication and missed school repeatedly.

The ALJ also considered the findings of Dr. Bokelman, regarding MT's deficits in cognitive ability.  However, he also noted that Dr. Bokelman but did not recommend any

6

significant treatment interventions.[2] In light of the foregoing, the ALJ concluded that MT has a less than a marked limitation in acquiring and using information.

Plaintiff contends that the ALJ failed to consider the testing done in November 2022, in combination with the school records. Namely, In November 2022, he was found to have a full-scale IQ of 66. (Tr. 760). Plaintiff notes that these scores were considered valid, and MT put forth a good effort. Id. Additionally, on the Woodcock Johnson Test of Achievement, MT scored at the 3rd grade level for nearly every area tested (i.e. reading, math, written language and broad achievement. (Tr. 762). On the BASC-3, MT was "at-risk" in school problems meaning he has difficulty comprehending and completing schoolwork in a variety of academic areas. (Tr. 763). Thus, Plaintiff notes that MT's academic skills, ability to apply those skills and his fluency with academic tasks were all within the very low ranges. (Tr. 766).

Moreover, his cumulative grade report for his seventh-grade year show failing grades in English Language Arts and Science and his grades for the second semester of his ninth-grade year were all failing grades, with an F in every subject but one. (Tr. 426, 443). Plaintiff also notes that at the hearing, MT testified to having trouble following classwork and an inability to complete work on his own. (Tr. 61-62).

Plaintiff argues that the ALJ found that Dr. Bokelman did not recommend any "significant treatment interventions" yet Dr. Bokelman listed seven different recommendations for MT, including occupational therapy and several interventions to help with decoding and reading words and to improve his mathematical abilities. (Tr. 766). As such, Plaintiff contends that MT's poor performance in school is not solely

---

[2] David Bokelman, M.Ed., was MT's school psychologist. (Tr. 25). In November 2022, Dr. Bokelman evaluated MT as a part of the evaluation team who was to assess MT's functioning as a tenth-grade student. On the Wechsler Intelligence Scale, the claimant obtained a full-scale IQ of 66 with a working memory score of 67 and processing speed score of 66. (Tr. 760)

based on his attendance and lack of medication, but clearly a result of an intellectual disability as noted by Dr. Bokelman. Thus, the ALJ's finding of a "less than marked" limitation in this domain lacks support from the record. Plaintiff's contentions are not well-taken.

With respect to Dr. Bokelman, the ALJ recognized that he administered IQ testing and that MT's scores fell in the very low range. (Tr. 25). The ALJ also noted that despite his scores, Dr. Bokelman did not recommend an IEP or 504. Id. The ALJ also recognized that Dr. Bokelman made the suggested outlined above by Plaintiff. Id. Ultimately, the undersigned finds that the ALJ properly considered the objective evidence of record, including Plaintiff's grades, treatment history, medication compliance and absences from school. The ALJ also properly evaluated the findings from Dr. Bokelman, the school psychologist.

The ALJ further considered the opinions of state agency medical consultants, who reviewed the evidence of record and found that Plaintiff had a marked limitation in interacting and relating with others, but no limitation in moving about and manipulating objects and less than marked limitations in acquiring and using information, attending and completing tasks, the ability to care for himself, and health and physical well-being. (Tr. 28-29). The ALJ noted that evidence was received into the record after the state agency consultants rendered their findings. However, the ALJ determined that the later acquired evidence did not provide any new or material information that would alter any findings about MT's residual functional capacity and are consistent with the residual functional capacity assessed herein (Social Security Ruling 96-6p). (Tr. 29). As detailed above, the ALJ noted, *inter alia,* that the evidence received at the hearing level shows MT's symptoms and behaviors generally improved with consistent and compliant care.

8

In light of the foregoing, the undersigned finds that the ALJ properly determined MT has a less than marked limitation in acquiring and using information. This Court's review is limited to a determination of whether "substantial" evidence exists in the record as a whole, defined as consisting of "more than a scintilla of evidence but less than a preponderance." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The ALJ's analysis easily meets that standard and his decision is substantially supported in this regard.

*2. Attending and Completing Tasks*

Plaintiff further argues that the ALJ erred in finding "less than marked" limitation in the domain of attending and completing tasks. The domain of attending and completing tasks requires an assessment of how well a child is able to focus and maintain his attention, and how well he begins, carries through, and finishes his activities, including the pace at which he performs activities and the ease with which he changes them. See 20 C.F.R. § 416.926a(i); see also SSR 09-4p, 2009 WL 396033, at *2.

In finding that MT had less than marked limitations in this domain, the ALJ noted that while MT was diagnosed with ADHD which could reasonably be expected to interfere with the claimant's ability to attend and complete tasks, there is no objective evidence of marked limitations. (Tr. 26). In support of this determination, the ALJ noted that MT demonstrated fair attention/concentration at times and at other times, he was noted to be hyperactive during medication management visits. (Tr. 26). During those visits, treatment notes indicate that MT had not been taking his medication, and his mother reported his symptoms improved with medication. The ALJ also noted that MT's mother reported improved focus and behavior when he did take medication. (Tr. 26).

The ALJ further noted that MT's grades ranged from A+ and C- during the first quarter of the 2018- 2019 school year. (Tr. 26). However, during the first quarter of the 2019-2020 school year, his teachers noted he had problems with focus, motivation, and effort. Id. It was also reported that MT was again not taking medication at that time. Despite a lack of medication, the ALJ noted that during most of the 2019-2020 academic year, the evidence shows the claimant's cumulative grades for the year ranged from A+ to C- in every subject. (Tr. 26). MT's most recent report card continues to show poor grades, but his mother reiterated at the hearing that he does not always comply with medication. The evidence also shows between twenty to thirty unexcused absences per year, which the ALJ found would certainly interfere with academic development. (Tr. 27)

Last, the ALJ considered that MT's extracurricular activities were inconsistent with marked or extreme limitations. Namely, the MT's mother testified that he is able to focus on activities he enjoys, such as playing video games and playing basketball. While not dispositive of the instant action, the ALJ found that participation in these type of activities does require an ability to sustain attention and concentration to reach predictable goals.

Plaintiff, however, contends that the record reflects that even when he was taking his medications, he demonstrated off task behavior leading to disciplinary action and had trouble focusing and completing/turning in his classwork. (Tr. 342, 344, 352, 353). During a reassessment visit with St. Joseph Orphanage in February, treatment notes indicate that Claimant needed consistent redirection from his mother and the provider to answer questions, maintain focus, pulled items off the desk, kept attempting to look out the window, unable to remain seated, constant fidgeting, poor eye contact and

10

restlessness, and his mental status exam exhibited poor attention and concentration. (Tr. 679). Even while on medication, Claimant continued to have difficulty with inattention, impulsiveness and staying seated. (Tr. 554-557, 590-591).

Plaintiff further argues that the ALJ improperly determined that MT's extracurricular activities are inconsistent with a marked or extreme limitation since MT can focus on playing video games and playing basketball (Tr. at 27). Plaintiff notes that SSR 09-4p indicates that reliance on the ability to focus on playing video games may be misplaced: stating "Some children with impairments can attend to some tasks, but not to all tasks in all settings. Such children may exhibit 'hyperfocus', an intense focus on things that interest them, such as video games, but be limited in their ability to focus on other tasks. These kinds of limitations in the domain of attending and completing tasks are common in children with ADHD." Plaintiff's contentions, however, fail to demonstrate any factual or legal error.

With respect to Plaintiff's extracurricular activities of playing videogames and basketball, the ALJ explicitly stated that such activities were "not dispositive of the instant action," but did require an ability to sustain attention and concentration to reach predictable goals. (Tr. 27). Additionally, the ALJ's decision indicates that he properly considered MT's school records as well as the records from St. Joseph Orphanage related to his medication management and mental health treatment. (Tr. 24-27). Notably, a court may not reverse so long as the ALJ's analysis falls within a "zone of choice," a standard that is met here. As such, the ALJ's decision should not be disturbed.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                                        */s Stephanie K. Bowman*
                                        Stephanie K. Bowman
                                        United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| FEAYANEE D., on behalf of minor child, M.T., | Case No. 1:24-cv-143 |
| Plaintiff | Hopkins, J. Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit right on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).